# EXHIBIT A

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SAYLOR, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, and JASON V. O'BYRNE, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff Jacob Saylor ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Caribou Biosciences, Inc. ("Caribou" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Caribou securities between July 14, 2023 and July 16, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Caribou is a clinical-stage biopharmaceutical company that purports to develope genome-edited allogeneic cell therapies for the treatment of hematologic malignancies in the U.S. and internationally.   The Company's pipeline includes allogeneic, or "off-the-shelf," cell therapies from its chimeric antigen receptor ("CAR") -T ("CAR-T") cell and CAR-natural killer ("CAR-NK") cell platforms.  Allogeneic cell therapies are referred to as "off-the-shelf" because they use cells that have already been collected from a donor, and which were modified, multiplied, and stored in a facility, before being infused into a patient.  According to the Company, this affords allogeneic cell therapies numerous advantages over their autologous counterparts, which rely on extracting, modifying, and multiplying a patient's own cells before being infused back into that same patient.

3.      Caribou's lead product candidate is CB-010, an allogeneic anti-CD19 CAR-T cell therapy that the Company is evaluating in patients with, *inter alia*, relapsed or refractory large B cell non-Hodgkin lymphoma ("r/r B-NHL") in the Company's ongoing ANTLER Phase 1 clinical trial, with a focus on second-line large B cell lymphoma ("LBCL").

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) they had overstated CB-010's safety, efficacy, and durability relative to approved autologous CAR-T cell therapies in treating patients with r/r B-NHL and/or LBCL, as well as CB-010's overall clinical results and commercial prospects; (ii) Caribou was at significant risk of having insufficient cash, liquidity, and/or other capital to fund its current business operations, including preclinical research activities associated with the allogeneic CAR-NK platform; (iii) all the foregoing was likely to have a significant negative impact on Caribou's business and operations; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

5. On June 2, 2024, Caribou issued a press release announcing that it had "presented updated clinical data from the ongoing ANTLER Phase 1 trial that [purportedly] indicates a single dose of CB-010 . . . has the potential to rival the safety, efficacy, and durability of approved autologous CAR-T cell therapies."

6. The next day, Evercore ISI ("Evercore") analysts downgraded Caribou stock to "in line" and dropped their price target to $3.00 from $13.00, stating that they were "not yet convinced" that Caribou's therapy "will be competitive and wait on the sidelines until data in 1H 2025." In particular, the Evercore analysts stated, *inter alia*, that "[o]verall, efficacy of CB-010 in 2L [second-line] LBCL is not competitive vs autologous CAR-T with lower response rate and much shorter PFS [progression-free survival]", while also noting additional risks related to CB-010's safety and competition.

7. On this news, Caribou's stock price fell $0.735 per share, or 25.52%, to close at $2.145 per share on June 3, 2024.

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

8.     Then, on July 16, 2024, Caribou disclosed in an SEC filing that it had "discontinued preclinical research activities associated with its allogeneic CAR-NK platform and reduced its workforce by 21 positions, or approximately 12%", explaining that "[t]he Company is undertaking this reduction to extend its cash runway".

9.     On this news, Caribou's stock price fell $0.09 per share, or 3.3%, to close at $2.64 per share on July 17, 2024.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Caribou is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**PARTIES**

15. Plaintiff, as set forth in the attached Certification, acquired Caribou securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16. Defendant Caribou is a Delaware corporation with principal executive offices located at 2929 7th Street, Suite 105, Berkeley, California 94710. The Company's common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "CRBU."

17. Defendant Rachel E. Haurwitz ("Haurwitz") has served as Caribou's President and Chief Executive Officer at all relevant times.

18. Defendant Jason V. O'Byrne ("O'Byrne") served as Caribou's Chief Financial Officer at all relevant times until his resignation from the Company effective September 27, 2024.

19. Defendants Haurwitz and O'Byrne are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants possessed the power and authority to control the contents of Caribou's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Caribou's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Caribou, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

21. Caribou and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22. Caribou is a clinical-stage biopharmaceutical company that purports to developgenome-edited allogeneic cell therapies for the treatment of hematologic malignancies in the U.S. and internationally. The Company's pipeline includes allogeneic, or "off-the-shelf," cell therapies from its CAR-T cell and CAR-NK cell platforms. Allogeneic cell therapies are referred to as "off-the-shelf" because they use cells that have already been collected from a donor, and which were modified, multiplied, and stored in a facility, before being infused into a patient. According to the Company, this affords allogeneic cell therapies numerous advantages over their autologous counterparts, which rely on extracting, modifying, and multiplying a patient's own cells before being infused back into that same patient.

23. Caribou's lead product candidate is CB-010, an allogeneic anti-CD19 CAR-T cell therapy that the Company is evaluating in patients with, *inter alia*, r/r B-NHL in the Company's ongoing ANTLER Phase 1 clinical trial, with a focus on second-line LBCL.

24. Caribou's CAR-NK cell platform included CB-020, which the Company was evaluating as a cell therapy to overcome some of the challenges of targeting solid tumors. Although Caribou ultimately paused CB-020's development at some point between November 2023 and March 2024, Defendants maintained that Caribou was continuing to develop and advance its CAR-NK cell platform, which they asserted had the potential to treat multiple diseases.

6

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Materially False and Misleading Statements Issued During the Class Period**

25.     The Class Period begins on July 14, 2023.  On July 13, 2023, after markets closed, Caribou filed a preliminary prospectus supplement on Form 424B5 with the SEC in connection with the Company's upcoming public offering (the "Offering") of its common stock (the "Preliminary Prospectus Supplement").  The Preliminary Prospectus Supplement represented, in relevant part, that "[w]e currently intend to use the net proceeds from this offering, together with our existing cash, cash equivalents, and marketable securities, to fund [*inter alia*] . . . preclinical development of our CB-020 product candidate[.]"

26.     Notwithstanding its representation that Caribou would use proceeds from the Offering to fund preclinical development of CB-020, the Preliminary Prospectus Supplement purported to warn of the risk that Defendants "may" use those proceeds differently than as specified in the Preliminary Prospectus Supplement, while downplaying the likelihood of the same, stating, in relevant part:

> Our management will have broad discretion in the application of the net proceeds, if any, from this offering and the amounts and timing of our actual expenditures will depend on numerous factors . . . . As of the date of this prospectus supplement, we cannot predict with certainty all of the particular uses for the net proceeds to be received upon the completion of this offering or the amounts that we will actually spend on the uses set forth above. The amounts and timing of our actual expenditures and the extent of our preclinical, clinical, and future development activities *may* vary significantly depending on numerous factors, including the progress of our development efforts, the status of and results from our ongoing and planned clinical trials, the timing of regulatory submissions and the outcome of regulatory review, our ability to take advantage of expedited programs or to obtain regulatory approval for product candidates, and the timing and costs associated with the manufacture and supply of our product candidates for clinical development or commercialization, as well as any collaborations that we may enter into with third parties for our product candidates and any unforeseen cash needs. Although *we intend to spend the net proceeds of the offering as stated above*, circumstances *may* arise when, for sound business reasons, a re-allocation of funds *may* be necessary or advisable.

(Emphases added.)  Plainly, the foregoing risk warning was a generic, catch-all provision that was not tailored to Defendants' actual known risk that Caribou had insufficient cash, liquidity,

7

and/or other capital to fund its current business operations and, as such, Defendants were likely to, *inter alia*, discontinue preclinical research activities associated with the Company's allogeneic CAR-NK platform, of which CB-020 was a part.

27. On July 14, 2023, Caribou filed the finalized prospectus supplement on Form 424B5 with the SEC in connection its Offering of its common stock, which reiterated that "[w]e currently intend to use the net proceeds from this offering, together with our existing cash, cash equivalents, and marketable securities, to fund [*inter alia*] . . . preclinical development of our CB-020 product candidate[,]" and which contained the same boilerplate risk warning as referenced in ¶ 26, *supra*, that Defendants "may" use those proceeds differently than as specified, while downplaying the likelihood of the same, thereby confirming those statements as originally presented in the Preliminary Prospectus Supplement.

28. On August 8, 2023, Caribou issued a press release announcing its second quarter 2023 financial results and providing a business update (the "2Q23 Earnings Release"). The 2Q23 Earnings Release quoted Defendant Haurwitz as stating, in relevant part:

> In 2023, we have advanced our programs to build value across the pipeline and position Caribou for continued momentum ahead . . . . For our lead program, *we are excited by the positive CB-010 dose escalation data demonstrating response rates that rival those from the approved autologous CAR-T cell therapies*.

(Emphasis added.)

29. In addition, the 2Q23 Earnings Release asserted that, as of a June 20, 2023 data cutoff date, long-term follow-up data from all sixteen patients treated in dose escalation of the ongoing ANTLER Phase 1 clinical trial of CB-010 "demonstrated [that] . . . CB-010 was generally well tolerated with *adverse events consistent with autologous . . . anti-CD19 CAR-T cell therapies*." (Emphasis added.)

30. The 2Q23 Earnings Release also stated, *inter alia*, that this same data demonstrated that "69% of patients (11 of 16) achieved a complete response (CR)"; that "44% of patients (7 of

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

16) had a CR at ≥6 months" with "24 months [being] the longest CR maintained to date"; and that "[f]or the subset of patients with large B cell lymphoma (LBCL) (N=10) . . . 70% (7 of 10) achieved a CR" and "50% (5 of 10) had a CR at ≥6 months" with "18 months [being] the longest CR maintained to date."

31.     With respect to Caribou's cash, cash equivalents, and marketable securities, the 2Q23 Earnings Release stated, in relevant part, that "Caribou had $292.5 million in cash, cash equivalents, and marketable securities as of June 30, 2023," which "does not include the approximately $134.6 million in net proceeds from the Company's underwritten public offering completed in the third quarter of 2023", and that "Caribou expects its cash, cash equivalents, marketable securities, and net proceeds from the recent public offering will be sufficient to fund its current operating plan into Q4 2025."

32.     Also on August 8, 2023, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2023 (the "2Q23 10-Q").  The 2Q23 10-Q stated, in relevant part, that "[o]ur management expects that existing cash, cash equivalents, and marketable securities of $292.5 million as of June 30, 2023, will be sufficient to fund our current operating plan for at least the next 12 months from the date of issuance of our condensed consolidated financial statements."

33.     Appended as exhibits to the 2Q23 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the 2Q23 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report"; and that "the financial statements, and other financial information included in this report, fairly present in all

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

34.     On November 7, 2023, Caribou issued a press release announcing its third quarter 2023 financial results and providing a business update (the "3Q23 Earnings Release").  The 3Q23 Earnings Release quoted Defendant Haurwitz as stating, in relevant part:

> In 2023, we have advanced our programs to build value across the pipeline and position Caribou as a leader in the allogeneic CAR-T cell therapy space . . . . **With two years of cash and continued financial discipline, we are well positioned to execute on our <u>current</u> programs** and continue Caribou's momentum.

(Emphases added.)

35.     With respect to CB-010, the 3Q23 Earnings Release stated, in relevant part, that "Caribou continues to enroll second-line LBCL patients in the dose expansion portion of the ongoing ANTLER Phase 1 clinical trial based on positive data from the dose escalation portion of the trial."

36.     With respect to Caribou's cash, cash equivalents, and marketable securities, the 3Q23 Earnings Release stated, in relevant part, that "Caribou had $396.7 million in cash, cash equivalents, and marketable securities as of September 30, 2023," which "Caribou expects . . . will be sufficient to fund its current operating plan into Q4 2025."

37.     Also on November 7, 2023, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2023 (the "3Q23 10-Q").  The 3Q23 10-Q stated, in relevant part, that "[o]ur management expects that existing cash, cash equivalents, and marketable securities of $396.7 million as of September 30, 2023, will be sufficient to fund our current operating plan for at least the next 12 months from the date of issuance of our condensed consolidated financial statements."

38.     Appended as exhibits to the 3Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 33 *supra*, signed by the Individual Defendants.

10

39. On March 11, 2024, Caribou issued a press release announcing its fourth quarter and full year 2023 financial results and providing a business update (the "4Q/FY23 Earnings Release"). With respect to CB-010, the 4Q/FY23 Earnings Release stated, in relevant part, that "[a]s previously reported, CB-010 demonstrated encouraging data from the dose escalation portion of the ANTLER Phase 1 clinical trial in 16 patients with [r/r B-NHL]" and that "*[d]ose escalation data showed CB-010 has the potential to rival the efficacy and safety profile of approved autologous CAR-T cell therapies*." (Emphasis added.)

40. With respect to Caribou's cash, cash equivalents, and marketable securities, the 4Q/FY23 Earnings Release stated, in relevant part, that "Caribou had $372.4 million in cash, cash equivalents, and marketable securities as of December 31, 2023," which "Caribou expects . . . will be sufficient to fund its current operating plan into Q1 2026."

41. Also on March 11, 2024, Caribou filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2023 (the "2023 10-K"). With respect to CB-010, the 2023 10-K stated, *inter alia*, that "[s]afety results from patients at all three dose levels [in the ANTLER Phase 1 clinical trial] showed CB-010 was generally well-tolerated *with adverse events ('AEs') consistent with autologous . . . anti-CD19 CAR-T cell therapies*." (Emphasis added.)

42. Additionally, the 2023 10-K repeatedly asserted that Defendants "expect[] that [Caribou's] existing cash, cash equivalents, and marketable securities of $372.4 million as of December 31, 2023, will be sufficient to fund our current operating plan for at least the next 12 months from the date of issuance of our consolidated financial statements."

43. Appended as exhibits to the 2023 10-K were substantively the same SOX certifications as referenced in ¶ 33 *supra*, signed by the Individual Defendants.

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

44.     On May 7, 2024, Caribou issued a press release announcing its first quarter 2024 financial results and providing a business update (the "1Q24 Earnings Release").  With respect to Caribou's cash, cash equivalents, and marketable securities, the 1Q24 Earnings Release stated, in relevant part, that "Caribou had $345.9 million in cash, cash equivalents, and marketable securities as of March 31, 2024," which "Caribou expects . . . will be sufficient to fund its current operating plan into Q1 2026."

45.     Also on May 7, 2024, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2024 (the "1Q24 10-Q").  The 1Q24 10-Q stated, in relevant part, that "[o]ur management expects that existing cash, cash equivalents, and marketable securities of $345.9 million as of March 31, 2024, will be sufficient to fund our current operating plan for at least the next 12 months from the date of issuance of our unaudited condensed consolidated financial statements."

46.     Appended as exhibits to the 1Q24 10-Q were substantively the same SOX certifications as referenced in ¶ 33 *supra*, signed by the Individual Defendants.

47.     On June 2, 2024, Caribou issued a press release announcing that it had "presented updated clinical data from the ongoing ANTLER Phase 1 trial" at the 2024 American Society of Clinical Oncology ("ASCO") Annual Meeting, which purportedly "indicate[d that] a single dose of *CB-010 . . . has the potential to rival the safety, efficacy, and durability of approved autologous CAR-T cell therapies*."  (Emphasis added.)

48.     The statements referenced in ¶¶ 25-47 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) they had overstated CB-010's safety, efficacy, and durability relative to approved autologous CAR-T cell therapies in

12

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

treating patients with r/r B-NHL and/or LBCL, as well as CB-010's overall clinical results and commercial prospects; (ii) Caribou was at significant risk of having insufficient cash, liquidity, and/or other capital to fund its current business operations, including preclinical research activities associated with the allogeneic CAR-NK platform; (iii) all the foregoing was likely to have a significant negative impact on Caribou's business and operations; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

49. In addition, throughout the Class Period, Caribou's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations. Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Caribou to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." Defendants' failures to disclose CB-010's true ability (or lack thereof) to rival the safety, efficacy, and durability of approved autologous CAR-T cell therapies in treating patients with r/r B-NHL and/or LBCL, CB-010's true clinical results and commercial prospects, that Caribou was at significant risk of having insufficient cash, liquidity, and/or other capital to fund its current business operations, and that, accordingly, Defendants were likely to discontinue preclinical research activities associated with Caribou's allogeneic CAR-NK platform and significantly reduce the Company's workforce, violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

50. Defendants also violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Caribou to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants'

13

failures to disclose CB-010's true ability (or lack thereof) to rival the safety, efficacy, and durability of approved autologous CAR-T cell therapies in treating patients with r/r B-NHL and/or LBCL, CB-010's true clinical results and commercial prospects, that Caribou was at significant risk of having insufficient cash, liquidity, and/or other capital to fund its current business operations, and that, accordingly, Defendants were likely to discontinue preclinical research activities associated with Caribou's allogeneic CAR-NK platform and significantly reduce the Company's workforce, violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

## The Truth Emerges

51. On June 3, 2024, during pre-market hours, Evercore analysts issued a report addressing Caribou and its updated clinical data from the ongoing ANTLER Phase 1 trial (the "Evercore Report"), downgrading the Company's stock to "in line" and dropping their price target to $3.00 from $13.00, stating that they were "not yet convinced" that Caribou's therapy "will be competitive and wait on the sidelines until data in 1H 2025." In particular, the Evercore Report stated, *inter alia*:

> **[Caribou] may have unlocked the key to allogenic CAR-T. But we are not yet convinced that it will be competitive and wait on the sidelines until data in 1H25 [first half of 2025]. Reducing our rating to In Line and PT [price target] to $3.**
>
> At ASCO this weekend, [Caribou] presented details of the HLA subgroup analysis of the P1 [Phase 1] ANTLER study for its allogenic CD19 CAR-T, CB-010. The idea was to move it closer to its autologous counterparts. The analysis showed patients with HLA match of at least 4 antigens do better than those with lesser or no HLA match. **But is it good enough? ORR [overall response rate] looks strong, but CR [complete response] and PFS [progression-free survival] still fall behind autologous CAR-T[.]**

(Emphases in original.)

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

52.     With further respect to CB-010's efficacy and durability as compared to its autologous counterparts, the Evercore Report stated, in relevant part:

> In this subset of 11 LBCL patients treated with CB-010 in the P1 ANTLER study with at least 4 (max HLA match was 6), ORR was 91%, CR was 36% and 6 month PFS was 53% (suggests 6 months is close to the median (50%) PFS level).
>
> This compares relatively well to autologous CAR-T which achieved 83-86% ORR. *But CR for autologous counterparts is in the 65-66% range and median PFS is beyond 14 months.*
>
> * * *
>
> *Overall, efficacy of CB-010 in 2L [second-line] LBCL is not competitive vs autologous CAR-T with lower response rate and much shorter PFS.*

(Emphases added.)

53.     With respect to risks related to CB-010's safety and competition, the Evercore Report stated, in relevant part:

> **Enhanced lymphodepletion may pose safety risk.** The CB-010 trial uses an enhanced lymphodepletion (LD) regimen that is expected to create a larger window for optimal engraftment of the infused cells. However, it also comes with the potential risk for infection and neurotoxicity. Another allogenic cell therapy company, Precision Bio used an enhanced LD protocol in its allogeneic CAR-T trial. Despite encouraging efficacy, the regimen led to multiple deaths and prompted the company to ameliorate the regimen to improve safety . . . . Bears worry that the current safety profile is warranted by careful patient selection in the clinical setting and the enhanced LD may led to serious AE [adverse events] e.g., deaths in broader patient population. Also, bears wonder how much of the efficacy/durability may be related to the aggressive LD regimen. It's worth noting that this regimen is not used for other [Caribou] programs.
>
> **Lead candidates in crowded space.** CD19 and BCMA are highly competitive fields for cell therapies. Besides FDA approved CAR-Ts and bispecifics, there are numerous autologous and allogeneic CAR-T programs in development.
>
> **Solid tumor is a competitive space.** Immunotherapies for solid tumors is a crowded space. We counted 46 cellular and mRNA therapies in clinical development for treatment of solid tumor, including CAR-T, TCR, NK, and TIL., all early stage.

(Emphases in original.)

15

54. On this news, Caribou's stock price fell $0.735 per share, or 25.52%, to close at $2.145 per share on June 3, 2024.

55. Then, on July 16, 2024, after markets closed, Caribou filed a current report on Form 8-K with the SEC, disclosing, in relevant part:

On July 16, 2024, the Company discontinued preclinical research activities associated with its allogeneic CAR-NK platform and reduced its workforce by 21 positions, or approximately 12%. The Company is undertaking this reduction to extend its cash runway and focus resources on its allogeneic CAR-T cell therapy platform and on rapidly advancing four oncology and autoimmune disease clinical programs through multiple milestones expected in 2024 and 2025. The Company expects to substantially complete the reduction by the end of the third quarter of 2024.

\* \* \*

In connection with the workforce reduction, the Company currently estimates it will incur approximately $0.5 million to $1.0 million in costs, consisting primarily of cash severance costs, benefits, and transition support services for impacted employees, which the Company expects to recognize in the third quarter of 2024.

The estimates of costs and expenses that the Company expects to incur in connection with the CAR-NK platform discontinuation and workforce reduction are subject to a number of assumptions, and actual results may differ materially. The Company may also incur costs not currently contemplated due to events that may occur as a result of, or that are associated with, this decision.

56. On this news, Caribou's stock price fell $0.09 per share, or 3.3%, to close at $2.64 per share on July 17, 2024.

57. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

58. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so

16

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Caribou securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

60. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Caribou securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Caribou or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

62.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

63.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Caribou;

- whether the Individual Defendants caused Caribou to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Caribou securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

65.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

18

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Caribou securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Caribou securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

66. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

67. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

68. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

19

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

70. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Caribou securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Caribou securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

71. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Caribou securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Caribou's finances and business prospects.

72. By virtue of their positions at Caribou, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

20

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

73. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Caribou, the Individual Defendants had knowledge of the details of Caribou's internal affairs.

74. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Caribou. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Caribou's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Caribou securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Caribou's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Caribou securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

75. During the Class Period, Caribou securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Caribou securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Caribou securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Caribou securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

76. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

77. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

78. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79. During the Class Period, the Individual Defendants participated in the operation and management of Caribou, and conducted and participated, directly and indirectly, in the conduct of Caribou's business affairs. Because of their senior positions, they knew the adverse

22

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

non-public information about Caribou's misstatement of income and expenses and false financial statements.

80. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Caribou's financial condition and results of operations, and to correct promptly any public statements issued by Caribou which had become materially false or misleading.

81. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Caribou disseminated in the marketplace during the Class Period concerning Caribou's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Caribou to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Caribou within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Caribou securities.

82. Each of the Individual Defendants, therefore, acted as a controlling person of Caribou. By reason of their senior management positions and/or being directors of Caribou, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Caribou to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Caribou and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

83. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Caribou.

23

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  December 24, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

24

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS